IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DARRELL LEE HALL, SR., | § § § | |
| *Plaintiff*, | § § | |
| v. | § § | Civil Action No. H-12-2852 |
| FAUSTI AVILA, M.D., and LISA VATANI, P.A., | § § § § | |
| *Defendants*. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is the motion for summary judgment filed by defendants Fausto Avila, M.D., and Lisa Vatani, P.A. (Docket Entry No. 33), to which plaintiff filed a response (Docket Entries No. 37, 38, 39).

Based on the Court's careful consideration of the motion, the response, the record, the pleadings, and the applicable law, the Court **GRANTS** the motion for summary judgment and **DISMISSES** this lawsuit for the reasons that follow.

### I. BACKGROUND AND CLAIMS

At all times relevant to this lawsuit, plaintiff was a state inmate assigned to the Pack Unit. On April 27, 2012, defendant Dr. Fausto Avila prescribed for plaintiff a 21-day course of Tylenol #3, a narcotic, to be taken three times a day for plaintiff's complaints of pain. One of the doses was scheduled for 9:00 a.m., for which plaintiff had a medical pass allowing him to go to clinic. However, it was also plaintiff's usual routine to go to the law library every morning from 8:30 a.m. to 10:30 a.m., and he did not want to lose any law library time.

On May 1, 2012, plaintiff asked the law librarian, John D. Seigle, if he could either return in the afternoon to "make up" any lost time caused by his leaving to take his medication, or just switch to the 12:30 p.m. library session. According to plaintiff, Seigle said he would discuss the issue with defendant Lisa Vatani, a physician assistant at the unit, because Seigle wanted plaintiff and the other medically-unassigned offenders to use the 8:30 a.m. library session.

Plaintiff asserts that his 9:00 a.m. medical pass and medication dose were subsequently discontinued on May 4, 2012, causing him pain and discomfort. He states that he attempted to discuss the issue with Seigle and Vatani, but they would not answer his questions. On May 7, 2012, plaintiff asked Avila to reinstate the 9:00 a.m. Tylenol # 3 dose and medical pass, but plaintiff states he was denied the 9:00 a.m. dose for sixteen days. It was plaintiff's contention that Seigle convinced Vatani to convince Avila to delete the 9:00 a.m. medication dose so that Seigle would not need to change plaintiff's library hours. In short, plaintiff claimed that the law librarian persuaded plaintiff's medical care providers to discontinue his 9:00 a.m. Tylenol # 3 dose, and that they did so for no reason other than as a favor to Seigle.

Seigle filed a motion to dismiss plaintiff's claims against him, arguing that plaintiff's claims were based on speculation and conclusory allegations that Seigle had successfully persuaded Vatani to ask Avila to reduce plaintiff's medication as a favor to Seigle. The Court agreed, and dismissed plaintiff's claims against Seigle.

The Court now turns its attention to plaintiff's remaining claim: that defendants Avila and Vatani were deliberately indifferent to plaintiff's serious medical needs by decreasing his narcotic medication from three doses per day to two doses per day for sixteen days.

## II. ANALYSIS

A prison official violates the Eighth Amendment's prohibition against cruel and unusual punishment if the official shows deliberate indifference to a prisoner's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 103–06 (1976). The official must know of and disregard an excessive risk to inmate health or safety and be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The official also must draw that inference. *Id.*

A prisoner who disagrees with his course of medical treatment or alleges that he should have received further or different treatments or medications does not raise a claim of deliberate indifference. *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). Rather, an inmate must show that prison officials denied him treatment, purposefully provided him improper treatment, or ignored his medical complaints. *Id.* Matters of medical judgment, and an inmate's disagreement with those medical judgments, do not give rise to deliberate indifference. *See Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) ("[T]he decision whether to provide additional treatment is a classic example of a matter of medical judgment."). Moreover, failed treatments, negligence, and medical malpractice do not give rise to claims for deliberate indifference. *Id.*

Plaintiff's medical records show that he underwent a total knee replacement in May of 2011. On April 12, 2012, he was seen by an orthopedics specialist, Dr. Steven J. Overturf, for a follow-up visit. As a result of the visit, Overturf devised a plan of care for plaintiff that included physical therapy, a cane pass, and Tylenol #3 twice a day as needed for pain. (Docket Entry No. 35, Exhibit A, p. 5.) On April 27, 2012, Avila started plaintiff on a 21-day course of Tylenol #3 three times a day as needed for pain relief. *Id.*, Exhibit B, p. 18. On May 2, 2012, Vatani entered the following note in plaintiff's medical chart:

> Brought to my attention yesterday that [patient] unable to keep morning appt. with law library because of his 9AM Tylenol #3 dose. Consulted with Dr. Avila about the appropriateness of Tylenol #3 for a chronic pain that is still being evaluated by [Hospital Galveston] ortho[pedic] clinics. We do not treat chronic non-malignant pain with narcotics in this setting. Dr. Avila agreed that the medication should be either discontinued altogether or reduced. Today I have reduced the med to [twice daily] for a short time, however it will not be continued after that time.

*Id.*, p. 20. Plaintiff's narcotic medication was then reduced from three to two doses per day.

Plaintiff's medical chart shows that shortly thereafter, on May 9, 2012, plaintiff came to the clinic saying he "wants Narcotics three times a day," and accusing Avila and Vatani of "interfering with his care." The chart noted that plaintiff presented as a "belligerent individual with a cane." It was explained to plaintiff during the visit that all final decisions for his medical care in prison were made by the prison health care providers, not by outside consultants. *Id.*

On May 18, 2012, plaintiff was again seen in clinic for complaints of pain and the need for narcotics. He was examined by a physician assistant, Valerie Sterner, who noted

4

that plaintiff's recent neurological tests at Hospital Galveston evinced peripheral polyneuropathies of non-musculoskeletal origin. Plaintiff was started on a short course of Tegretol to control the neuropathic pain, and was given a referral to the neurology clinic. He was counseled that pharmacy guidelines prohibited the long-term use of narcotics. *Id.*, p. 27. At his follow-up visit with Sterner one week later, plaintiff was reported as having "no complaints on current meds." *Id.*, p. 32. However, at his subsequent follow-up visit on May 30, 2012, plaintiff complained of unwanted side effects from the new medications, and asked that they be discontinued. The new medications were discontinued. *Id.*, p. 35.

On June 11, 2012, plaintiff returned to clinic, stating that none of the other medications were working and that he needed Tylenol #3 to control "extreme neck, shoulder, back, [and] knee pain." *Id.*, p. 45. The health care provider requested approval for Tramadol, a "narcotic-like" pain medication, but the pharmacy declined approval. *Id.*, p. 47. Plaintiff again returned to clinic on June 18, 2012, "insistent that [he] needed renewal of T#3." *Id.* Sterner again informed him that narcotics and controlled substances are against prison pharmacy policy. Plaintiff agreed to a Kenalog injection, which he admitted had helped in the past. He requested, and was given, a refill for his anti-inflammatory medication. His chart showed that the pending orthopedic and neurology referrals had been approved. *Id.*

Plaintiff returned to clinic again a week later, renewing his request for a 21-day course of Tylenol #3. *Id.*, p. 50. Avila agreed to the request. *Id.* At the end of the twenty one days, plaintiff asked the health care provider for another Tylenol #3 refill for "neck/back/knee

5

pain." *Id.*, p. 65. The provider declined the refill request, but stated that the request would be referred to Avila for evaluation. The chart reflected that "[Patient] refused this provider's offer to submit non-form for narcotics as well as alternative chronic pain treatment." *Id.* Avila subsequently approved two short courses of ten and fourteen days of Tylenol #3. *Id.*, pp. 103, 104, 106.

The Court notes that, although plaintiff complains in this lawsuit that Avila and Vatani failed to follow the outside orthopedic specialist's recommended dosage when they reduced the Tylenol #3 dosage from three doses a day to two, he is factually incorrect. The specialist had actually recommended a twice a day dosage; it was Dr. Avila who increased plaintiff's Tylenol #3 to a three times a day dosage. In later lowering the dosage to twice a day, Avila and Vatani did nothing more than change the dosage back to the specialist's original recommendation.

A careful review of the medical records submitted to this Court by both parties shows that defendants Avila and Vatani were not deliberately indifferent to plaintiff's serious medical needs in temporarily reducing his Tylenol #3 dosage from three times a day to two times a day. When it was brought to Vatani's attention on May 1, 2012, that plaintiff had been placed on narcotics for chronic pain, she discussed with Avila the appropriateness of such a treatment plan in light of the prison's policy prohibiting narcotics for non-malignant chronic pain. Avila agreed that the narcotics should be discontinued or at least reduced. Plaintiff's narcotics dosage was temporarily reduced, but was later increased.

It is clear from the medical records that plaintiff's medical providers repeatedly diagnosed, treated, and monitored his medical conditions and addressed those conditions and his complaints. Thus, the medical records and the care recorded therein rebut plaintiff's claims of general deliberate indifference. *See Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995) (noting that medical records of sick calls, examinations, treatments, medications, and diagnoses may rebut claims of deliberate indifference). The medical records also show that plaintiff was repeatedly advised that prison policy did not allow long-term narcotics use for non-malignant pain control, and that defendants attempted to control plaintiff's pain with non-narcotic medications and treatments. Plaintiff ultimately discontinued these other treatment modalities and insisted on being prescribed narcotics. No deliberate indifference is shown.

To the extent plaintiff complains that defendants Avila and Vatani were deliberately indifferent to his serious medical needs in reducing his narcotics dosage from three doses per day to two doses per day for sixteen days, he fails to establish an Eighth Amendment violation. The decision of when, and how much, medication should be provided plaintiff was a matter of medical judgment. His complaint shows nothing more than a disagreement with his medical providers' plan of care that he be given two, rather than three, narcotic doses per day. *See Gobert*, 463 F.3d at 346. No deliberate indifference is shown, and defendants are entitled to summary judgment dismissal of plaintiff's claims.

## III. CONCLUSION

The motion for summary judgment (Docket Entry No. 33) is **GRANTED**, and this lawsuit is **DISMISSED WITH PREJUDICE**. Any and all pending motions are **DENIED AS MOOT**.

Signed at Houston, Texas, on this the 30th day of December, 2014.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE